# APPEAL OF THE COUNTY OF DELAWARE.

### FROM THE DECREE OF THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, IN EQUITY.

Argued February 10, 1888—Decided March 5, 1888.

1. A bill filed to restrain public officers from proceeding in official acts, but without any averment that they are proceeding without lawful authority, is demurrable.

2. The commissioners of a county cannot be controlled in the exercise of their discretion in the building of a county bridge, either in its size, its plan, or in the location of its piers or abutments, at the instance of a private citizen.

3. A land owner filed a bill to restrain the county commissioners from the erection of a new bridge, wholly within the lines of the old bridge and public roadway: Held, That as damages for whatever injuries were suffered, were within § 8, article XVI., of the constitution, and recoverable in an action at law, with sufficient security in the power of municipal taxation, the bill should be dismissed.

4. Whether a county bridge, become unsafe by reason of decay, may be replaced by a new erection without the authority of the grand jury and Court of Quarter Sessions, the bill not being a tax-payer's bill, not decided.

Before PAXSON, STERRETT, CLARK and WILLIAMS, JJ.; GORDON, C. J., TRUNKEY, and GREEN, JJ., absent.

No. 31 July Term 1887, Sup. Ct.; court below, No. 1 December Term 1884, C. P. in equity.

On November 1, 1884, Samuel Riddle filed a bill in equity against the county of Delaware and Owen Yarnall and others, county commissioners, in which it was averred, in substance:

That the plaintiff was and had been for many years the owner of a valuable tract of land in the township of Middletown, upon which he had large and valuable mill buildings erect-

ed, where for many years past he had been engaged in the manufacture of cotton and other goods and had enjoyed the use and power of the stream of water known as Chester creek, by means of dams erected thereon and by raceways leading to and from said mills.

That a public highway had been in use over said lands for many years, crossing said creek by a bridgeway constructed with open spans, with free passageways thereunder and full enjoyment of the premises to the plaintiff and his predecessors in title for a period far exceeding twenty-one years past, the bridgeway with the passageways underneath extending from near the mill-building of the plaintiff to the abutment on the north side of the present channel of said creek.

That the waters of said stream in times of high water flowed over the space intervening between the present channel way, in low stages of water, and the point where said bridgeway commences, near said mill-building, always with free passage under the spans of said bridgeway ; and the plaintiff had constructed a tail-race from one of his mills standing above said bridge, which raceway passed under the span of said bridge and was necessary for the proper enjoyment of said mill in carrying away the waste water from the turbine wheel to the creek.

That said roadway over the lands of the plaintiff had never been laid out and established as a public road under authority of law or by any proceedings in the proper court, and that therefore the county and the public could use the same and the said bridgeway only in such manner as a right to use the same may have been acquired by long usage.

That the county of Delaware and the defendants, the county commissioners, were reconstructing the aforesaid bridgeway by the erection of a new bridge and abutments and were building a solid roadway from the point near the plaintiff's mill to the abutment at the side of the creek channel, in place of the bridge with spans between the said points; and by so doing would fill up said raceway of the plaintiff and prevent the flow of the waste water from said mill and the flow and escape of the flush waters of said creek, thus endangering the safety of the plaintiff's mills and preventing his passage under said span and the full enjoyment of his property, causing him great and

unnecessary injuries of so serious a nature that they could not be compensated in damages.

The prayers were for a preliminary, and on final hearing, a perpetual injunction and for further relief.

The defendants having appeared, a motion on part of the plaintiffs to continue the preliminary injunction granted on the filing of the bill, was heard upon affidavits of the parties filed. On December 1, 1884, this motion was disposed of by the court, CLAYTON P. J., by the following opinion and decree:

The plaintiff, in his bill, supported by his own and other affidavits, charges that the county commissioners have notified him that they intend to remove the old bridge at Rockdale and put up a new bridge in its place; that a new abutment is to be put up on the Middletown side, about 80 feet from the Aston side, filling in, with solid earth and stone work, the intervening space between this new abutment and the old abutment. He also charges that the new bridge is to be shorter and much wider than the old structure, and that he will suffer irreparable damage from the narrowing of the channel for the passage of the water, and from the taking of his ground now used for a passageway and tail-race.

The prayer of the bill is, first, for specific relief; and, secondly, for such other relief as to the court may seem proper.

On the argument it was admitted by the defendants that they were about to reconstruct the bridge referred to, in such a manner as to amount substantially to a new bridge; that the present wooden structure was to be removed; that the three spans now existing are to be reduced to one; that the roadway is to be widened, piers removed, a new abutment erected, and the superstructure to be of iron instead of wood. They also admit that no action has been taken to obtain the concurrence of the grand jury or the approval of the Court of Quarter Sessions, and claim the right and power to rebuild this bridge, without the concurrence of the court and grand jury, by virtue of the act of April 13, 1843, P. L. 221.

The powers of county commissioners to erect, reconstruct and repair county bridges, is clearly defined by the Supreme Court in the case of the Commonwealth v. The Commissioners of Monroe County, 2 W. & S. 495. The case was decided in,

1841. The reasoning of the court below, fully concurred in by the Supreme Court, is unanswerable. As the law then stood, the commissioners had no power to do ordinary repairs to any bridge without the concurrence of the Quarter Sessions. The case also decides that the reconstruction of a county bridge, which had been swept away by a flood, was substantially a new bridge, and required the concurrence of the grand jury and court.

The act of 1843, above referred to, was passed to give the commissioners power, and to make it their duty, to attend to the ordinary repair of county bridges, but was not intended to invest them with power, under the name of repairs, to build entirely new bridges. When a county bridge is destroyed by fire, flood, or other accident, a new bridge can only be erected by and with the approval of the grand jury and court. The reason is obvious. The grand jury are the representatives of the tax payers. No schemes for the expenditure of public money can be permitted without the consent of the people. If the commissioners have the power to take down bridges, erected by the county at a comparatively small expense, and replace them with new ones, requiring a large expenditure of public money, all the safeguards of the law against public extravagance would soon be destroyed.

It is contended, however, that as this is not a tax payer's bill, the question of authority is not raised. While it may be true that the question of authority to build the bridge is not the direct issue between the parties, it is incidental to it. The bill prays for relief from an alleged unlawful act, and Wilhelm's Appeal, 79 Pa. 120, decides that where there is jurisdiction of the subject matter, equity may determine any incidental question necessarily involved. The plaintiff charges the commissioners with an unlawful interference with his property. He may therefore show a want of authority to do the act complained of.

The injunction is continued.

On December 16, 1884, the defendants filed their answer, which, so far as material to the questions decided in this court, admitted that defendants were about to reconstruct the bridge and roadway, in the manner set out in the bill, and alleging

the necessity therefor in the fact that the timbers of the old bridge had become decayed, dilapidated and unsafe, and the way over it was too narrow now for the increased travel; that the defendants in the exercise of their best judgment were proceeding to widen the traveled way over a solid fill of earth and masonry to the abutment at the channel side, leaving however between the abutment and the water's edge sufficient room for the unobstructed passage of the plaintiff at all ordinary stages of water; averring that the roadway along which the said bridge was erected was laid out in 1760, forty-five feet wide, and subsequently opened, under proper and regular proceedings in the Court of Quarter Sessions for the county of Chester, then including the county of Delaware; that said public highway had never been altered or vacated between the points in dispute, and that it was not proposed to widen the roadway in the reconstruction thereof beyond the limits of its width as originally laid out; denying in detail the injuries anticipated by the plaintiff in such reconstruction and, averring that the defendants were acting strictly within the line of their duty and authority as public officials and in the exercise of the discretion which the law conferred upon them, prayed that the bill be dismissed.

With their answer the defendants filed a motion to dissolve the preliminary injunction. This motion having been argued, on February 2, 1885, it was disposed of by the court, CLAYTON, P. J., in the opinion and decree following:

The real question between the parties to this bill is, which shall pay the expense of arching the plaintiff's tail-race which crosses the highway under one of the arches of the bridge, as now constructed, the county or the plaintiff. If the commissioners have authority to take down the present bridge and construct a new one on a different plan, without a jury of view and the concurrence of the grand jury and court, then this injunction should be dissolved, because the right to recover the cost of bridging the tail-race could be settled under the ordinary forms of an action at law and there is no necessity for the intervention of a court of equity.

This brings us to the most important question in the case. Have the commissioners authority by law to take down a county

bridge, when in their judgment a more substantial and com-
modious one is necessary for the accommodation of public
travel? It is admitted that they had no such right previous to
1843. The rule then was that bridges were to be kept in re-
pair by the same persons whose duty it was to keep the high-
way, of which the bridge was a part, in order. The act of
April, 1843, changed this rule and threw upon the county the
duty of repairing county bridges. This, however, did not
authorize the commissioners, where a bridge was destroyed by
fire or floods, to erect a new one.

On Saturday, Aug. 5, 1843, Delaware county was visited
by an extraordinary flood. Nearly all the bridges on Chester
creek were swept away. In some cases the course of the stream
was so changed as to make it necessary to alter the sites of
some of the bridges. To obviate the difficulty and overcome
the delay of proceedings in the usual way, the act January 26,
1844, P. L. 24, special to Delaware county, was passed. It de-
clares that the act April 13, 1843, " shall be so construed as to
authorize the commissioners of said county to rebuild any
bridge which may be destroyed by floods or otherwise." The
learned counsel for the commissioners contends that the word
"otherwise" in the act just cited, covers the case of a bridge
so dilapidated by wear, use and time's decay as to render it
economical to remove it and build an entirely new structure
upon a new, more expensive and commodious plan. No rule
for the construction of statutes will sustain this argument. It
clearly means any sudden or accidental destruction, as by a
tornado, fire or other casualty. It cannot mean that the com-
missioners may themselves " destroy " a bridge and without
further authority than this act of assembly proceed to con-
struct a new one upon an entirely different plan.

The last and only other act of assembly upon the subject
is that of May 5, 1876, which I construe to be nothing more
than a statute extending to the whole state, the act of January
26, 1844, which was before that time special to Delaware
county. This act clearly specifies what the word " otherwise"
in the act of 1844 was intended to mean, that is to say " blown
down, destroyed, partly destroyed or swept away by floods,
freshets, ice, storm, fire or other casualty."

The counsel for the commissioners holds that in the original

proceedings for the erection of a county bridge, the only province of the viewers, court and grand jury is to pass upon the question of public necessity for the bridge. That question once settled in favor of the petitioners, he contends that they have a carte blanche as to the style and expense of the structure, and that if a new necessity arises for a more commodious and expensive one, they alone have the discretion to remove the insufficient bridge, and build such a one as in their judgment the public necessity may require. This is a mistake. The first question the original viewers have to decide is whether the proposed bridge be too expensive to be borne by the township. To properly decide this, they must ascertain the cost of the proposed bridge. The same question is then submitted to the grand jury, who are authorized to visit the site and call before them the county commissioners, with their plans, specifications and estimates. If they concur, the practice in Delaware county is for the court to submit the report to the commissioners, and if they concur, then to require them to lay before the court their plans and estimates for the work, when, if the court concurs, the order issues and the bridge is built. Should the plans be changed or the costs be unreasonably increased, or a structure be erected materially different from the one concurred in by the court and grand jury, it would be such a fraud upon the court as to probably render the commissioners personally liable for the increased cost: Lehigh Co. v. Kleckner, 5 W. & S. 181.

True, the letter of the law does not require the estimate to be made until after the concurrence of the court, but if the court, to secure intelligent judgment, requires it to be made before concurrence, and the commissioners cause it to be so made and submit it to the court as the basis of the court's action, they will be as much bound by it as if it were made afterwards, and in the order prescribed by the statute. It is equally clear that where a county bridge has been erected according to the provisions of the statute, and it should afterwards appear that the public convenience requires a more commodious and expensive one upon a new, improved and entirely different plan, the question of the new necessity should be inquired into and decided in the same manner as in the erection of the original structure. There is no difficulty in the way

of such a proceeding.    Either the supervisor or citizens can petition for a jury of view.    A few months, at farthest, will be required to have the question decided.    In the mean time the commissioners must keep the old bridge in traveling condition.

The cause was then put at issue, and *Mr. George B. Lindsay* was appointed examiner and master, who on February 7, 1887, filed an elaborate report, finding as facts, inter alia, that the roadway upon the line of which the bridge had been erected had been laid out by regular proceedings in the Court of Quarter Sessions of Chester county, in 1760 and 1761, as alleged in the answer, and that the commissioners had conformed to the lines of the public road as they had found it; together with the facts set out in the opinion of the court below confirming his report, recommending a decree.

Various exceptions were filed to this report by the defendants.    After hearing, on March 7, 1887, the court filed the following opinion:

The master finds that the defendants "have erected a bridge which encroaches sixty feet upon the natural creek bed.    It cuts off the natural escape of the water from the plaintiff's water wheel, requiring him to provide a culvert or some other outlet for it.    It will dam back the water upon his mill more than ever before in time of such freshets as are known to occur in the creek.    It will cast an additional flow of water over his lands, outside the creek banks, flooding his houses to his injury."    The master also finds that the plaintiff has not slept upon his rights; that he not only objected, but that he filed his bill for an injunction as soon as he discovered the injury he was likely to suffer, and before the work was done.

The case was before the court some time ago on a motion for a preliminary injunction.    We have no reason to modify any of the views then expressed.    Let it be granted, however, for the purpose of the argument, that the commissioners have the right to rebuild a county bridge without the approval of the court; still under article XVI., § 8 of the constitution, the plaintiff is entitled to his injunction.    Delaware County is a public corporation invested with power to take private lands for public use.    The constitution prohibits such corporations

from injuring private persons by the enlargement or improvement of their works without first paying or securing the damages. The master finds that in the enlarging or improving of this public work, the lands of the plaintiff have been greatly injured and that no compensation has been made or secured. Since the adoption of the constitution of 1874, I am of opinion that no municipal, or other corporation, can improve or enlarge its works to the injury of private persons without first making or securing compensation. The proper thing for the commissioners to have done would have been to petition the court for a jury to report upon the necessity for a bridge, and to assess the damages likely to be suffered by the plaintiff if a bridge should be ordered. This was the course pursued in the Shoemakerville bridge case. It seems to me that the sooner the commissioners undo their wrongful act and commence right, the better for all concerned. It is not necessary to go into the other questions passed upon by the master.

The injunction heretofore granted is now made perpetual, costs to be paid by the defendants. Decree to be drawn in form by counsel and submitted for approval to the court.

A formal decree having been signed in accordance with the foregoing opinion, the defendants took this appeal, specifying that the court erred:

1. In not dismissing the plaintiff's bill.

2. In making a final decree restraining the defendants from completing the bridge and compelling them to remove portions of the structure already completed.

3. In ordering the defendants to pay the costs.

*Mr. H. C. Howard*, for the appellants:

1. The only legislation regulating the building, rebuilding and repair of county bridges, is contained in the acts of June 13, 1836, P. L. 560; April 13, 1843, P. L. 221; January 26, 1844, P. L. 24; May 5, 1876, P. L. 112. Not only is there nothing in these provisions requiring any action by the court and grand jury, in the matter of the repair or rebuilding of a county bridge, but it is submitted that without such action the powers conferred are ample: Oil Creek Bridge Case, 47 Pa. 361; Humphreys v. Armstrong Co., 56 Pa. 204; Hague v. Phil-

adelphia, 48 Pa. 530; Broomall's App., 75 Pa. 173. Moreover, there is no averment in the bill that the defendants are without legal authority to do what is proposed.

2. The court below was correct in holding that if there were nothing else in this case except the matter of obstructing the tail-race, there would be no ground for an injunction, as the plaintiff's rights in this respect could readily be settled by an action at law: Penn. R. Co. v. Duquesne Bor., 46 Pa. 223. The plaintiff has no right to open a raceway across the public road, in such way as to compel the public to be at the expense of maintaining a bridge over it: Woodring v. Forks Tp., 28 Pa. 355; Newlin Tp. v. Davis, 77 Pa. 317. Moreover, there was no irreparable injury shown, and the plaintiff has a full and adequate remedy at law. The defendants being a county and its commissioners, they cannot be interfered with in the exercise of discretionary power, except upon a palpable disregard of the law: Wheeler v. Rice, 83 Pa. 232; Wharton v. Sch. Directors, 42 Pa. 358; Warfel v. Cochran, 34 Pa. 381; Hill v. Commissioners, 1 Pars. 501.

None of the plaintiff's lands were taken, and if he has suffered any consequential injury from the new work, damages can be awarded to him in an action on the case: Chester Co. v. Brower, 117 Pa. 647.

*Mr. George E. Darlington,* for the appellee:

The plaintiff should have the injunction for the following reasons:

1. If a corporation, municipal or private, abuse its privileges and encroach upon the rights of individuals, the court has authority to interfere by injunction: Hill v. Commissioners, 1 Pars. 507; Wharton v. School Directors, 42 Pa. 362. And there is a strong and mischievous necessity, as shown by the testimony: Minnig's App., 82 Pa. 373; Jarden v. Railroad Co., 3 Wh. 512; Rhea v. Forsyth, 37 Pa. 506; Big Mountain Imp. Co.'s App., 54 Pa. 372; Sheaffer and Heckscher's App., 100 Pa. 379; Berlew v. Electric Illum. Co., 1 Pa. C. C. R. 651.

2. The defendants, without authority of law, are changing and widening the public road and bridgeway on the plaintiff's land, where they were never laid out and never before used,

without compensation or assessment of damages: Keene v. Bristol Bor., 26 Pa. 46; § 8, art. XVI., of the Constitution: Buckalew, 252 n.; Miller v. Penn. R. Co., 2 Chest. Co. R. 533; Patent v. Railroad Co., 14 W. N. 545; New Brighton v. U. P. Church, 96 Pa. 339; Pusey v. Allegheny, 98 Pa. 522; Chester Co. v. Brower, 117 Pa. 647.

3. An injunction will be granted to prevent disturbance and interference with an easement, and the plaintiff is likewise entitled in order to protect his riparian rights: Rhea v. Forsyth, 37 Pa. 506; Johnson's App., 95 Pa. 78; Buck Mountain Coal Co. v. Lehigh Coal & N. Co., 50 Pa. 100; New Boston Coal Co. v. Water Co., 54 Pa. 171; Coulston & Forbes, Law of Waters, 111.

4. It was not necessary that the plaintiff should show special damage to entitle him to the injunction: Hacke's App., 101 Pa. 245; Penn. Coal Co. v. Sanderson, 113 Pa. 126; Kauffman v. Griesemer, 26 Pa. 413; Martin v. Riddle, 26 Pa. 415; Williams v. Gale, 3 Har. & J. 231; Bicket v. Morris, L. R. 1 Scotch App. 47; Ewing v. Colquhoun, L. R. 2 App. C. 839; Attorney G. v. Lonsdale L. R., 7 Eq. Cas. 377; Attorney G. v. Terry, L. R. 9 Ch. App. 423.

5. The defendants have no right to stop the natural flow of water in a stream: Rowe v. Addison, 34 N. H. 306; Haynes v. Burlington, 38 Vt. 350; Lawrence v. Railway Co., 4 Eng. L. & E. 265; Parker v. Lowell City, 11 Gray 353; Lawrence v. Fairhaven, 5 Gray 110; Rowe v. Granite Bridge Co., 27 Pick. 344; Perry v. Worcester, 6 Gray 544; Gould, Water Courses, 359.

OPINION, MR. JUSTICE PAXSON:

If this had been a taxpayer's bill with the proper averments, we would have had before us in an orderly way the question of the power of the commissioners of Delaware County to tear down and rebuild a county bridge without any action on the part of the grand jury and the Court of Quarter Sessions. It is not, however, a taxpayer's bill. It was filed by a property owner, whose only complaint is that the commissioners are erecting the bridge in a manner that will be injurious to his property rights. The learned judge below evidently saw this difficulty when he said in his opinion: "It is contended, how-

ever, that as this is not a taxpayer's bill, the question of authority is not raised. While it may be true that the question of authority to build the bridge is not the direct issue between the parties, it is incidental to it. The bill prays for relief from an alleged unlawful act, and Wilhelm's Appeal, 79 Pa. 120, decides that where there is jurisdiction of the subject matter, equity may determine any incidental question necessarily involved. The plaintiff charges the commissioners with an unlawful interference with his property. He may therefore show a want of authority to do the act complained of."

This paragraph is evidently based upon a misconception of the nature and effect of the plaintiff's bill. We do not understand it to pray for relief "from an alleged unlawful act," nor to charge the commissioners "with an unlawful interference with his property." On the contrary, it charges no unlawful act on the part of the commissioners. There is no averment in the bill that they are proceeding without proper authority to rebuild the bridge, and without such averment a taxpayer's bill would be demurrable. Public officials like county commissioners can only be restrained in their official acts when it appears that they are proceeding without lawful authority. This is the principle which underlies Sharpless v. The City of Philadelphia, 21 Pa. 147, and the line of cases following it. The building of county bridges is one of the recognized duties of county commissioners. There is no averment that these commissioners are proceeding without the authority of the grand jury and Court of Quarter Sessions. We cannot therefore, as before stated, pass upon the question of their power to act without such sanction. Nor would it help the matter were we to permit the bill to be amended and by a convenient fiction treat it as a taxpayer's bill, for it would still lack the essential averments. It would have to be reconstructed from the foundations to give it any value as a taxpayer's bill. This cannot be done at this stage of the case.

It needs no authority to show that the county commissioners cannot be controlled in their discretion in building a county bridge at the application of a private citizen. This cannot be done either in the size of the bridge, its plan, or the location of its piers or abutments. The master finds that this bridge is located wholly on the old road-bed and within its lines. It

does not touch the land of the complainant. If it causes injury to the latter by interfering with his water rights, he has his remedy by an action on the case. The right to compensation for what are usually called consequential injuries, that is to say, where property is injured without being actually taken, is given by sec. 8 of article XVI. of the constitution. We do not agree, however, with the learned judge below, that a jury could be appointed to assess the damages. This can only be done where property is actually taken. We have therefore held that inasmuch as the legislature has provided no remedy for the assessment of such damages, an action on the case will lie to enforce the right conferred by the constitution: Penn. R. Co. v. Duncan, 111 Pa. 352; County of Chester v. Brower, 117 Pa. 647.

Nor do we agree with the court below that the complainant is entitled to his injunction until the county shall make compensation for the injury. The only difference between the late constitution and the present one in this respect is, that in the former, compensation was given only for property taken; in the latter, compensation is given for property taken, injured, or destroyed. In either case, compensation must be made or secured before such taking, injury, etc. It has been repeatedly held that the power of taxation in a municipal corporation is sufficient security for property taken by such corporation. Hence it logically follows that it is sufficient for property injured. These authorities are too familiar to need citation.

> The decree is reversed, and the bill dismissed at the cost of the appellee.