## DELAWARE RIVER JOINT TOLL BRIDGE COMMISSION *v.* COLBURN ET AL.

No. 563.   Argued February 26, 1940.—Decided May 27, 1940.

*Mr. Edward P. Stout,* with whom *Mr. John H. Pursel* was on the brief, for petitioner.

422

*Mr. Egbert Rosecrans* for respondents.

Mr. Justice Stone delivered the opinion of the Court.

The question is of the right of respondents to recover consequential damages to their New Jersey land, due to interference with their access to the land and with their light, air and view caused by petitioner's construction of a bridge abutment on adjacent land. The answer turns on the question whether the Compact of 1934 between New Jersey and Pennsylvania authorizing the construction of the bridge and its approaches, excluded the application to petitioner of a New Jersey statute without which respondents would enjoy no right of recovery under New Jersey law.

Petitioner, the Bridge Commission, is a "body corporate and politic" created by the Compact adopted by the legislatures of the two states, N. J. P. L. 1934, Ch. 215 (now N. J. R. S. 1937, 32: 8–1 *et seq.*), 1931 Pa. P. L. 1352; 1933 Pa. P. L. 827, and consented to by Congress, 49 Stat. 1058 (1935). The Compact authorized the

Commission to build bridges across the Delaware River between the two states, and for that purpose gave the Commission authority to acquire real property by purchase or by the exercise of eminent domain. The Commission, in the exercise of its authority in construction of a bridge between Phillipsburg, New Jersey and Easton, Pennsylvania, acquired by purchase land in the town of Phillipsburg, upon which it has located and constructed a highway approach to the bridge, on an embankment or abutment leading to the New Jersey end of the bridge. The property thus acquired and used includes land adjoining the rear of property owned by respondents, having its front on a public street. The embankment and the land on which it rests also crosses certain streets in the neighborhood not immediately adjacent to respondents' land which have been permanently closed by the public authorities, in order to provide for the bridge approach.

The present suit is a proceeding in mandamus, brought in the New Jersey Supreme Court to compel the Commission to take proceedings, which it is alleged are authorized and required by the Compact, to fix and award compensation to respondents for damages to their land, suffered by reason of the Commission's action in the construction of the abutment. The State Supreme Court sustained the special verdict of a jury which found that the Commission's action had damaged respondents by depriving them of access to their land and their enjoyment of light, air and view. The court found as a matter of law that as the abutment was located wholly on land acquired by the Commission, and as the streets in the neighborhood had been closed and grades changed by state authority, respondents were without right of recovery for the damages suffered, in the absence of some statute authorizing recovery. But it found such a statute in Ch. 297 of P. L. 1912 as amended by Ch. 76 of P. L. 1919

(now N. J. R. S. 1937, 32:9–1 *et seq.*), which it construed with the Compact as requiring the Commission to compensate for the damages which respondents had suffered. 119 N. J. L. 600; 197 A. 896.

Respondents, being without other adequate legal remedy, the court awarded a peremptory mandamus directing petitioner to compensate them for the damage or to take proceedings for the determination of the amount to be awarded as compensation pursuant to the provisions of Article III of the Compact, which it also held required the proceedings for that purpose to be taken according to Chapter 297 of P. L. 1912 as amended by Ch. 76 of P. L. 1919 (now N. J. R. S. 1937, 32:9–1 *et seq.*) On appeal the New Jersey Court of Errors and Appeals affirmed on the same grounds as those on which the Supreme Court rested its decision. 123 N. J. L. 197; 8 A. 2d 563. We granted certiorari, 308 U. S. 549, the questions of the construction of the Compact between states and of the jurisdiction of this Court being of public importance.

In *People* v. *Central Railroad,* 12 Wall. 455, jurisdiction of this Court to review a judgment of a state court construing a compact between states was denied on the ground that the Compact was not a statute of the United States and that the construction of the Act of Congress giving consent was in no way drawn in question, nor was any right set up under it. This decision has long been doubted, see *Hinderlider* v. *La Plata Co.,* 304 U. S. 92, 110, note 12, and we now conclude that the construction of such a compact sanctioned by Congress by virtue of Article I, § 10, Clause 3 of the Constitution, involves a federal "title, right, privilege or immunity" which when "specially set up and claimed" in a state court may be reviewed here on certiorari under § 237 (b) of the Judicial Code, 28 U. S. C. § 344. See *Green* v. *Biddle,* 8 Wheat. 1; *Pennsylvania* v. *Wheeling & Belmont Bridge Co.,* 13

How. 518; *Wedding* v. *Meyler,* 192 U. S. 573; cf. *Wharton* v. *Wise,* 153 U. S. 155; *Kentucky Union Co.* v. *Kentucky,* 219 U. S. 140, 161; *Hinderlider* v. *La Plata Co., supra.* Hence we address ourselves to the language of the Compact on which respondents rely to sustain a right of recovery for injury to their lands, for which, apart from the New Jersey statute of 1912, referred to in the Compact, the New Jersey courts have held there is no support in state law.

The Compact created the Commission as a "public corporate instrumentality" of the two states, to perform state functions, among others, the location, construction, operation and maintenance of bridges extending between the two states and across a specified section of the Delaware River. To this end it conferred upon the Commission the power:

"(b) To sue and be sued; . . .

"(h) To enter into contracts; . . .

"(j) To acquire, own, use, lease, operate and dispose of real property and interest in real property, and to make improvements thereon; . . . and

"(m) To exercise the power of eminent domain."

In connection with the acquisition of any real property for any authorized purpose, Article III of the Compact provides:

"If the commission is unable to agree with the owner or owners thereof upon terms for the acquisition of any such real property, in the State of New Jersey, for any reason whatsoever, then the commission may acquire such property by the exercise of the right of eminent domain, in the manner provided by an act of the State of New Jersey, entitled 'An Act authorizing the acquisition and maintaining by the State of New Jersey, in conjunction with the State of Pennsylvania, of toll bridges across the Delaware River, and providing for free travel across the same,' approved the first day of April, one thousand

nine hundred and twelve (chapter two hundred ninety-seven), and the various acts amendatory thereof and supplementary thereto, relating to the acquisition of interstate toll bridges over the Delaware River."

It further provides:

"The term 'real property,' as used in this compact, includes lands, . . . and interests in land, . . . and any and all things and rights usually included within the said term, and includes not only fees simple and absolute but also any and all lesser interests, such as easements, rights of way, uses, leases, licenses, and all other incorporeal hereditaments, and every estate, interest or right, legal or equitable, including terms of years and liens thereon by way of judgments, mortgages, or otherwise, and also claims for damage to real estate."

It will be noted that the effect of these provisions is to authorize the Commission to acquire "real property" by purchase or by eminent domain, and that by definition real property includes "interests in land" which are so defined as to include "claims for damage to real estate," and that, where resort to eminent domain is needful for the acquisition of such interests, the exercise of that power is to be "in the manner provided" in the New Jersey statute of 1912 as amended. By its terms the Compact confers upon the Commission the power to acquire the specified interests in land or relating to land, conditioned upon payment for the interests acquired; an amount agreed upon or fixed by proceedings in eminent domain. Beyond this it imposes no duty or obligation on the Commission to compensate for damages inflicted by its acts, but leaves the Commission subject to such liability as is imposed by the law of the state within which the Commission acts.

The New Jersey statute of 1912 which, as prescribed by Article III of the Compact affords the procedure by which the Commission is to exercise its power of eminent

domain, does not enlarge the duties or liability of the Commission as prescribed by the Compact. The amended statute of 1912 authorized a state commission, acting in coöperation with a like commission of Pennsylvania, to acquire the rights, franchises and property of bridge companies owning and operating existing toll bridges across the Delaware River within a specified territory and to operate and maintain them as free bridges.

It authorized the Commission to acquire the bridges by purchase or by eminent domain and for that purpose "to determine the compensation to be allowed as of the time of entry upon the property and taking possession thereof, for the value of property, franchises, easements or rights in the two States." It commands that after view of the premises and hearing, the Commission, in determining the amount of compensation, "shall estimate the value of the property taken, including any easement, rights or franchises incident thereto, as well as the damages for property taken, injured or destroyed, and shall state to whom the damages are payable."

Respondents insist that this direction that the commission created under the 1912 Act "shall estimate . . . damages for property taken, injured or destroyed" is, by the Compact, made a direction to petitioner for payment of consequential injuries to property to which the Compact makes no reference. Under the generally applicable decisions and statutes of New Jersey, as her courts have held in this case, the Commission is without liability to pay consequential damages. But it found a statutory creation of such liability in the Act of 1912 as amended in 1919. At the time of the adoption of the Compact there was no statute in New Jersey purporting to impose such a liability which was on its face applicable to the Commission. If the Act of 1912 as amended imposed such a liability, it appeared to be applicable only to a different corporate body from petitioner and then only in the case

of the transfer of ownership of existing toll bridges to the commission the acquisition of which could inflict no consequential damages. In entering into a compact it was then competent for the states to provide by its terms the extent to which they were to take over and apply to the new Commission, performing a different function under different circumstances, the substantive rules governing compensation upon the acquisition of existing toll bridges under the 1912 Act. The Compact was explicit in its specifications of what property interests should be taken and compensated for, and of the right and authority of the Commission to acquire them by purchase or by eminent domain. By its silence it left the Commission subject to such liability for consequential damages only as was imposed by the laws of the state, including the Act of 1912, except in so far as the Compact restricted the application of that Act. The Compact was equally explicit in its statement of the effect which was to be given to the 1912 Act and its amendments.

It is plain that, under the Compact, without reference to that legislation, the Commission could have acquired land by purchase and built a bridge upon it without subjecting itself to liability for consequential damages. But it was necessary that a procedure should be adopted for the exercise of the power of eminent domain conferred on the Commission by the Compact and this was done by the provision of the Compact that "the Commission may acquire such property by the exercise of the right of eminent domain, in the manner provided" by the 1912 Act. Under the Compact that Act is given effect only to the extent that it affords a manner or procedure of exercising the right of eminent domain, which is called into operation only if the Commission is unable to acquire needed property by purchase and then only as a means of fixing the compensation which, under the Compact, the Commission is required to pay. The Compact can be given

a more extensive effect only by disregarding its language and by attributing to its draftsmen an intention to adopt a rule of damages not generally applicable in the state and now for the first time adopted by a construction plainly inapplicable to the acquisition of existing toll bridges to which the Act of 1912 and its amendments alone referred.

Only by reading into the words of the Compact such a strained and unnatural meaning, is it possible to find in it a modification of the settled law of the state defining the recoverable damages upon the construction of public works. Nothing in the history of the Compact has been brought to our attention to suggest any reason or purpose for such modification in the special case of bridges to be constructed between the two states. Both the New Jersey courts thought they discerned such a reason in Article XVI, § 8 of the Pennsylvania constitution of 1874, which provides: "Municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements . . ." In passing upon this case they thought that this provision of the Pennsylvania constitution as construed by two decisions of the Pennsylvania Supreme Court in 1888 and 1889, *Chester County* v. *Brower*, 117 Pa. 647; 12 A. 577; *Appeal of Delaware County*, 119 Pa. 159; 13 A. 62, required compensation for consequential damages in eminent domain proceedings.

From this they reasoned that by the provisions of the Compact for the acquisition of property by eminent domain proceedings "in the manner" provided by the 1912 Act with its stipulation for payment of "damages for property taken, injured or destroyed" it was intended by the Compact to make the rule of damage under the Pennsylvania constitution applicable to property similarly ac-

quired by the Commission in New Jersey. But this reasoning overlooks the important circumstance that the Pennsylvania courts have consistently ruled that the constitutional provision is without application where there is no taking by eminent domain, and that municipal corporations or others, although possessed of the power of eminent domain, are not liable for consequential damages inflicted by the erection of structures wholly on their own land acquired by purchase. *Pennsylvania R. Co.* v. *Lippincott,* 116 Pa. 472; 9 A. 871; *Pennsylvania R. Co.* v. *Marchant,* 119 Pa. 541; 13 A. 690; *Hartman* v. *Pittsburgh Incline Plane Co.,* 159 Pa. 442; 28 A. 145; *Gillespie* v. *Buffalo, R. & P. Ry. Co.,* 226 Pa. 31; 74 A. 738; *Ridgeway* v. *Philadelphia & Reading Ry. Co.,* 244 Pa. 282; 90 A. 652.

Moreover, in 1928, six years before the Compact, the Supreme Court of Pennsylvania, in *Westmoreland Chemical & Color Co.* v. *Public Service Comm'n,* 294 Pa. 451; 144 A. 407, departed from its ruling in *Chester County* v. *Brower, supra,* and *Appeal of Delaware County, supra,* and has since held that the constitutional provision in the absence of a statute requiring it gives no right of recovery from a landowner for consequential damages resulting from structures located wholly on his own land whether acquired by purchase or eminent domain. *Hoffer* v. *Reading Co.,* 287 Pa. 120; 134 A. 415; *Soldiers and Sailors Memorial Bridge,* 308 Pa. 487, 491; 162 A. 309; *McGarrity* v. *Commonwealth,* 311 Pa. 436, 439; 166 A. 895.

Even though it be thought that it was intended to adopt, by the 1912 Act, the then prevailing interpretation of the Pennsylvania constitutional provision, that fact could have no force here, both because the constitutional provision has never been regarded by the Pennsylvania courts as applicable to the use of land acquired by purchase and because the Compact by its terms excludes

the 1912 Act from its operation except in so far as it affords a manner or method of procedure when the Commission resorts to eminent domain.

*Reversed.*