MEYER GROBART, SAMUEL GROBART, DORIS GROBART, LOUIS GROBART, ROSE ROWITZ, IRVING ROWITZ, YETTA TEITELBAUM, HARRY TEITELBAUM AND ANBERN SECURITY COMPANY, PROSECUTORS-RESPONDENTS, v. PASSAIC VALLEY WATER COMMISSION, REPONDENT-APPELLANT.

Submitted October 25, 1946—Decided January 17, 1947.

For the prosecutors-respondents, *Peter Bentley* (*John A. Hartpence,* of counsel).

For the respondent-appellant, *Benjamin J. Spitz.*

The opinion of the court was delivered by

OLIPHANT, CHANCELLOR. On January 20th, 1945, the respondent-prosecutor presented to the late Mr. Justice Porter a petition for the appointment of condemnation commissioners. It prayed that the said commissioners examine the right of the appellant to a perpetual easement in and its right to divert a daily average of 150 million gallons of water, more than the 22.6 million gallons it had the right to take through adverse use from the Passaic River or its tributaries, at any place or places located above the properties described in the petition which it alleged belonged to respondents named therein. The right acquired by adverse use was alleged to have been established in *Grobart et al.* v. *Passaic Valley Water Commission,* 134 *N. J. Eq.* 413; *affirmed,* 135 *Id.* 38. The petition prayed that the damages of the respondents resulting from such taking be assessed by the commissioners.

An order was made allowing an amendment to the petition for the diversion of 52.4 million gallons instead of 150 million gallons. The petition as amended was filed by the appellant pursuant to the authority granted by *R. S.* 40:62–108 and 150 and *R. S.* 20:1–1 to 33. An order was made by Mr. Justice Porter appointing the commissioners.

The respondents applied to the Supreme Court for a writ of *certiorari* to review Mr. Justice Porter's order appointing the commissioners and the order permitting the amendment of the petition. The writ was allowed.

The reasons urged were (1) there is no provision in the applicable statutes which authorizes the amendment of such petition, (2) that the appellant here failed to comply with the requirements of *R. S.* 40:62–108 to 40:62–150, inclusive, *R. S.* 58:1–17 to 23, inclusive, and (3) it failed to comply

with *R. S.* 58:6–3, in that it did not procure from the State Water Policy Commission, the right and authority to acquire the easement and rights described in the petition, which authorization or consent was a condition precedent to the filing of the petition for condemnation.

The respondents had the right to apply for *certiorari* on the grounds stated. It has been held that persons, who are named in a petition for condemnation as claimants of an interest in the land described therein, are parties to the proceeding and have the right to controvert the authority of the petitioner to institute such proceeding and to challenge the petitioner's alleged right to condemn. The legal remedy is *certiorari. Central Railroad Co.* v. *Hudson Terminal Railroad,* 46 *N. J. L.* 289 (at *p.* 295); *Chambers, &c.,* v. *Carteret and Sewaren Railroad Co.,* 54 *Id.* 85 (at *p.* 90); *Cf. Morris and Essex Railroad* v. *The Hudson Tunnel Railroad Co.,* 38 *Id.* 548; *Sisters of Charity, &c.,* v. *Morris Railroad Co.,* 84 *Id.* 310.

The proofs taken by deposition show that the appellant had obtained through adverse use a prescriptive right to divert 22.6 million gallons per day against those taking through the Grobart estate. *Grobart* v. *Passaic Valley Water Commission, supra.* They show that no consent has been granted by the State Water Policy Commission to the appellants for the sought for additional diversion.

There was testimony in the case by two engineers of the appellant and State Water Policy Commission that in their opinion the appellant derivatively and by contract through its predecessors in title had the right to divert to its use up to 75 million gallons of water per day without the consent of the State Water Policy Commission. These opinions were based upon a study of the charters and facts supplied by other people.

The Supreme Court stayed the condemnation proceeding to the end that the appellant commission should apply to the State Water Policy Commission (Department of Conservation) for the necessary approval of the contemplated diversion. The court held that an increase in the diversion from 22.6 to 52.4 million gallons per day constituted an additional

water supply within the meaning of *R. S.* 58:6–1 and the aforesaid approval was a condition precedent in this instance to the exercise of the power to condemn.

We do not fully share this view of the Supreme Court on the applicability of this statutory provision to such facts and rights as appear in this cause.

The appellant argues that it has the right by its own charters and by purchase under other charters, to use and divert the waters of the Passaic River, and to condemn what rights riparian owners may have thereto. It states as a fact that it acquired the charter rights of the following corporations and it took such rights derivatively thereby: The Society for Establishing Useful Manufactures, the Passaic Water Company, the Acquackanonk Water Company, the Franklin Lake Company, the East Jersey Water Company, the Montclair Water Company, the Kearny Water Company and the Passaic Valley Consolidated Water Company. Such recital of the appellant's predecessors in title may not be all inclusive.

The appellant specifically asserts it has the right to take 75 million gallons of water daily from the Passaic River in perpetuity which right was purchased from the Society for Establishing Useful Manufactures on January 1st, 1922, by the Acquackanonk, East Jersey, Montclair and Passaic Water Company, its predecessors in title.

It argues that *R. S.* 58:6–1 to 5 (*Pamph. L.* 1931, *ch.* 120) only applies where the respective municipal or other corporations do not otherwise have the right of condemnation and (2) where the consent of the State Water Policy Commission is required or obtained and that such sections do not apply to it because it had the right to divert 75 million gallons of water daily and it already had the power to condemn under *R. S.* 40:62–149.

It further argues that it is specifically excepted from the application of the 1931 act by *R. S.* 58:6–5 which provides: "Nothing contained in this chapter shall limit or in any way affect any power to condemn lands, water or water rights which any such municipal or other corporation or person may now have or hereafter acquire under any existing law of this

state, and such power so to condemn may be exercised as though this chapter had not been passed."

We could agree with such 'reasoning if it was established in this cause that the appellant had the right to divert 75 million gallons of water daily. But such right is not established in the record.

The two engineers who testified below that the appellant had such a right, obviously were not, competent to express an opinion on the legal question whether the appellant acquired such a right derivatively or by purchase through the charters and contracts of the appellant's predecessors in title. Their opinion was further vitiated in that it was based upon certain facts which these witnesses know of only by hearsay and not of their own knowledge.

The private statutes, charters and contracts of the appellant and its predecessors in title have not been pleaded or proved in the record and are not before the court. This court cannot judicially notice such private acts or charters which must be pleaded or proved. *Jersey City* v. *Jersey City and Bergen Railway Co.,* 70 *N. J. L.* 360, 361; *Commercial Trust Co.* v. *Hudson County Board of Taxation,* 86 *Id.* 424, 428; *affirmed,* 87 *Id.* 179; 23 *C. J.* 157, § 1980; *Wigmore on Evidence* (3d ed.), § 2572; *Jones Civil Evidence* (4th ed.) 198, § 114.

This court will not undertake to search out, examine and study such private acts and charters, which are merely referred to in the briefs before us. *Cf. Colburn* v. *Delaware Joint Toll Bridge Commission,* 123 *N. J. L.* 197; *reversed,* 310 *U. S.* 419; 60 *S. Ct.* 1039; 84 *L. Ed.* 1207. The facts should be established and found by the Supreme Court. *Vanderbach* v. *Hudson County Board of Taxation,* 133 *N. J. L.* 126; *Clifton* v. *State Board of Tax Appeals, Ibid.* 379.

The cause should be remanded to the Supreme Court to the end that the required proofs be taken, and the question whether the appellant has the derivative right to divert 75 million gallons of water daily be decided by that court.

Since there is a possibility that the state as a sovereignty may still have some outstanding sovereign rights in the waters

of the Passaic River and its tributaries, *McCarter* v. *The Hudson County Water Co.*, 70 *N. J. Eq.* 525, 533; *Worthen & Aldrich* v. *White Spring Paper Co.*, 74 *Id.* 647, 653, the state through the Attorney-General, should be made a party to the proceeding, to the end that the rights of the state, if any, may be protected.

The cause is therefore remanded to the Supreme Court for further proceedings in accordance with this opinion. Costs to abide the event.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, BODINE, PERSKIE, WACHENFELD, EASTWOOD, WELLS, RAFFERTY, FREUND, McGEEHAN, McLEAN, JJ. 12.