## NYSA–ILA VACATION AND HOLIDAY FUND and NYSA–ILA GAI Fund, Plaintiffs-Appellants,

v.

## The WATERFRONT COMMISSION OF NEW YORK HARBOR, Defendant-Appellee.

### No. 631, Docket 83–7715.

United States Court of Appeals, Second Circuit.

Argued Jan. 25, 1984.

Decided April 9, 1984.

---

Ernest L. Mathews, Jr., New York City (Thomas W. Gleason, New York City, of counsel), for plaintiffs-appellants.

Irving Malchman, New York City (Gerald P. Lally, General Counsel, David B. Greenfield, Asst. Counsel, New York City, of counsel), for defendant-appellee.

Before MANSFIELD, PIERCE and WINTER, Circuit Judges.

PIERCE, Circuit Judge:

Appellants NYSA–ILA Vacation and Holiday Fund ("Vacation Fund") and NYSA–ILA GAI Fund ("GAI Fund") (hereinafter alternatively referred to collectively as the "Funds")[1] appeal from a judgment, entered July 22, 1983, in the United States District Court for the Southern District of New York, Thomas P. Griesa, *Judge*, denying the Funds' motion for partial summary judgment, granting the motion for partial summary judgment of appellee The Waterfront Commission of New York Harbor ("Waterfront Commission" or "Commission"), and dismissing the Funds' action which sought, *inter alia*, a declaratory judgment that the Commission's assessment procedure is preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*

For the reasons set forth below, we affirm.

## I. BACKGROUND

The Waterfront Commission was established in 1953 by the Waterfront Commission Compact ("Compact"), an interstate compact between New York and New Jersey. The Compact was enacted by the legislatures of the two states,[2] and was

---

**1.** The abbreviations refer to the following:
NYSA—New York Shipping Association
ILA—International Longshoremen's Association
GAI—Guaranteed Annual Income

**2.** 1953 N.Y.Laws cc. 882, 883; 1953 N.J.Laws cc. 202, 203. The Compact is codified in N.Y.Unconsol.Laws §§ 9801–9873 (McKinney 1974), and constitutes Part I of Title 29 of McKinney's

Unconsolidated Laws. Parts II and III of Title 29 contain implementing provisions not part of the Compact approved by Congress. The three parts together make up the Waterfront Commission Act ("Act"), N.Y.Unconsol.Laws §§ 9801 *et seq.* (McKinney 1974). In this opinion, the provisions of the Act will be cited to the sections of McKinney's Unconsolidated Laws.

approved by the United States Congress. Act of Aug. 12, 1953, Pub.L. No. 83–252, 67 Stat. 541, *reprinted in* 1953 U.S.Code Cong. & Ad.News 605. The Compact constitutes Part I of the Waterfront Commission Act ("Act"), which formulates a scheme for governmental supervision of employment on the waterfront in the Port of New York, and which was intended to cope with problems of long-standing on New York and New Jersey's joint waterfront in that Port. *See De Veau v. Braisted,* 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960).

The Compact provides that the Commission's expenses, to the extent not covered by federal grants, are to be financed by statutory assessments paid to the Commission by employers[3] of longshore employees. N.Y.Unconsol.Laws § 9858 (McKinney 1974) ("§ 9858").[4] The amount of the assessment is "computed upon the gross payroll payments" made to such employees. Since its inception, the Commission has taken the position that "gross payroll payments" within the meaning of § 9858 include both regular wages and fringe benefits paid to employees. Since 1953 and thereafter, vacation and holiday benefits have been a standard form of fringe benefit, and the Commission included those benefits in calculating employer assessments. Similarly, when GAI benefits began in 1966, those payments were also included by the Commission in computing assessments.

In 1971, the appellant Funds were created as a result of a collective bargaining agreement between the ILA, the union, and the NYSA, which is a membership corporation whose members consist of steamship operators, stevedores, terminal operators and other firms performing related services for the shipping industry.[5] In addition

---

**3.** Although initially the term "employer" in the Compact was intended to refer only to stevedoring companies, this is no longer the case. As a result of the advent of container-shipping in the late 1950's, which reduced job opportunities and displaced longshoremen, labor and management in the Port of New York negotiated an employee fringe benefit program designed to ameliorate the effects of the new technology. The program provided a package of fringe benefits, including vacation and holiday benefits and supplemental employment benefits known as Guaranteed Annual Income ("GAI"). At the same time, a system was adopted through which contributions for the longshoremen's fringe benefits were made by shipping companies in order to supplement the contributions made by the stevedoring companies. This was done in recognition of the fact that since the shipping companies were the beneficiaries of containerization, they should assist in financing the longshoremen's fringe benefits.

Payments by the shipping companies were calculated on the basis of container cargo tonnage brought into the port. Over the years, it has developed that the shipping companies provide the great bulk of the payments for vacation, holiday and GAI benefits. Indeed, presently the shipping companies contribute about 97% of the benefits, with contributions from stevedoring companies amounting to roughly 3%. *See American Sugar Ref. Co. v. Waterfront Comm'n,* 55 N.Y.2d 11, 23, 432 N.E.2d 578, 583, 447 N.Y.S.2d 685, 690, *appeal dismissed sub nom. New York Shipping Ass'n v. Waterfront Comm'n,* 458 U.S. 1101, 102 S.Ct. 3474, 73 L.Ed.2d 1362 (1982).

**4.** Section 9858 was part of the Compact as approved by Congress, Art. XIII, par. 3, and it provides:

> After taking into account such funds as may be available to it from reserves, federal grants or otherwise, the balance of the commission's budgeted expenses shall be assessed upon employers of persons registered or licensed under this compact. Each such employer shall pay to the commission an assessment computed upon the gross payroll payments made by such employer to longshoremen, pier superintendents, hiring agents and port watchmen for work or labor performed within the port of New York district, at a rate, not in excess of two per cent, computed by the commission in the following manner: the commission shall annually estimate the gross payroll payments to be made by employers subject to assessment and shall compute a rate thereon which will yield revenues sufficient to finance the commission's budget for each year. Such budget may include a reasonable amount for a reserve but such amount shall not exceed ten per cent of the total of all other items of expenditure contained therein. Such reserve shall be used for the stabilization of annual assessments, the payment of operating deficits and for the repayment of advances made by the two states.

(footnote omitted).

**5.** NYSA acts as a multi-employer bargaining association that negotiates and administers collective bargaining agreements on behalf of its members with labor organizations.

to the two appellant Funds, the collective bargaining agreement established a third fund—the NYSA–ILA Fringe Benefit Escrow Fund ("Escrow Fund"). The three funds work in concert as follows: shipping and stevedoring companies deposit their respective share of fringe benefit payments into the Escrow Fund, which in turn makes payments to appellants Vacation Fund and GAI Fund as required by the needs of the latter two funds; then, the appellant Funds directly dispense fringe benefits to the longshoremen and their dependents.

From January 1, 1973 until March 31, 1975, the Commission's assessments on vacation, holiday and GAI benefits were paid, under protest, by the Vacation Fund and the GAI Fund, respectively.[6] Thereafter, pursuant to a resolution proposed by the Commission and adopted by NYSA in 1975, NYSA paid the assessments on these benefits under protest through 1977 when the payments were discontinued and litigation ensued.[7]

In April, 1978, several employers of longshoremen in the Port of New York commenced an action in the Supreme Court, New York County, challenging the Commission's assessment on vacation, holiday and GAI benefits. Specifically, the employers sought a judgment declaring (1) that vacation, holiday and GAI benefits are not "gross payroll payments" paid by "employer[s] . . . for work or labor performed" within the meaning of § 9858 of the Compact and, therefore, are not subject to assessment by the Commission; and (2) that the Commission's assessment on those benefit payments is unconstitutional upon the ground of federal preemption. The Commission answered the complaint, filed a counterclaim against the employers and, in addition, brought NYSA and the Funds into the state action as counterclaim defendants. In its counterclaim, the Commission sought a judgment that the benefit

payments are "gross payroll payments" within the meaning of § 9858 and that the plaintiffs are employers under that section, or, alternatively, that the Funds are, or that NYSA is, an employer under § 9858.

Meanwhile, prior to the disposition of the state action by the New York Supreme Court, the Funds, on January 5, 1979, initiated the federal action which forms the basis of this appeal, alleging that assessments on the benefits paid by the Funds are preempted by ERISA. This ERISA preemption claim was not raised by any of the parties in the state action. In a four-count complaint filed in the District Court for the Southern District of New York, the Funds sought a judgment declaring that ERISA preempted the assessments, a permanent injunction against the Commission and refunds of payments previously made by the Funds to the Commission. During a pre-trial conference, the parties to the federal action agreed that it should be placed on the suspense calendar pending the outcome of the state proceedings.

In an opinion dated February 11, 1982, the New York Court of Appeals rendered a decision in the state action in favor of the Commission. *American Sugar Refining Co. v. Waterfront Commission,* 55 N.Y.2d 11, 432 N.E.2d 578, 447 N.Y.S.2d 685, *appeal dismissed sub nom. New York Shipping Association v. Waterfront Commission,* 458 U.S. 1101, 102 S.Ct. 3474, 73 L.Ed.2d 1362 (1982). The Court of Appeals held that the vacation, holiday and GAI benefits are included in "gross payroll payments" within the meaning of § 9858 and are therefore assessable by the Commission. The court also held that the Funds, as well as the plaintiff-employers, are liable for assessment on those benefit payments. Finally, the Court of Appeals rejected plaintiffs' contention that the assessment is preempted by federal labor laws governing the collective bargaining process and by

6. Prior to December 31, 1972, payment of the Commission's assessments were made, under protest, through NYSA's Central Records Bureau. Funds for the payment were obtained by NYSA assessment against its members.

7. The Commission is currently seeking the payment of retroactive assessments on GAI and vacation and holiday benefits in the courts of New York State. These state proceedings have no bearing on the case before us.

federal tax laws. The United States Supreme Court dismissed an appeal from that decision "for want of a substantial federal question."

On March 12, 1982, the federal action was removed from the suspense calendar. Thereafter, the Funds moved for summary judgment on the declaratory judgment count (Count I) of their complaint. The Commission cross-moved for summary judgment on Counts I and II of the complaint—the declaratory judgment and permanent injunction counts. In an opinion dated July 20, 1983, the district court held that the Compact, including § 9858, is a federal law and, therefore, is not preempted by ERISA. Accordingly, Judge Griesa denied the Funds' motion for summary judgment, granted the Commission's cross-motion for summary judgment, and dismissed the entire action. This appeal followed.

## II. DISCUSSION

Section 514(a), 29 U.S.C. § 1144(a), of ERISA provides that "all State laws insofar as they may now or hereafter relate to

**8.** Section 514(d), 29 U.S.C. § 1144(d), provides:
(d) Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States ... or any rule or regulation issued under any such law.

**9.** The rule that congressional consent transforms an interstate compact within the Compact Clause into a law of the United States was well-established at the time *Cuyler* was decided. In 1940 the Supreme Court in *Delaware River Joint Toll Bridge Comm'n v. Colburn,* 310 U.S. 419, 60 S.Ct. 1039, 84 L.Ed. 1287 (1940), stated:
In *People v. Central Railroad,* 12 Wall. 455, 20 L.Ed. 458, jurisdiction of this Court to review a judgment of a state court construing a compact between states was denied on the ground that the Compact was not a statute of the United States and that the construction of the Act of Congress giving consent was in no way drawn in question, nor was any right set up under it. This decision has long been doubted ... and we now conclude that the construction of such a compact sanctioned by Congress by virtue of Article I, § 10, Clause 3 of the Constitution, involves a federal "title, right, privilege or immunity"....
*Id.* at 427, 60 S.Ct. at 1040 (citation omitted). "This holding reaffirmed the law-of-the-Union doctrine and the underlying principle that con-

any employee benefit plan" are superseded by ERISA. ERISA section 514(d), on the other hand, specifically states that the provisions of ERISA do not preempt any federal statutes.[8] Thus, to determine whether the assessment procedure of § 9858 is preempted by ERISA, we must decide whether the Compact, which includes § 9858, should be viewed as a federal or as a state statute. Judge Griesa, relying on the ratification of the Compact by the United States Congress, concluded that it should be viewed as a federal law and thus found not to be preempted or superseded by ERISA. We agree with that conclusion.

The Compact Clause of the United States Constitution, Art. I, § 10, cl. 3, provides that "No State shall, without the Consent of Congress ... enter into any Agreement or Compact with another State ...." The Supreme Court, in *Cuyler v. Adams,* 449 U.S. 433, 438, 101 S.Ct. 703, 706, 66 L.Ed.2d 641 (1981), recently reaffirmed the rule that "congressional consent transforms an interstate compact within [the Compact] Clause into a law of the United States"[9]

gressional consent can transform interstate compacts into federal law." *Cuyler,* 449 U.S. at 439 n. 7, 101 S.Ct. at 707 n. 7. *See Petty v. Tennessee-Missouri Bridge Comm'n,* 359 U.S. 275, 278, 79 S.Ct. 785, 788, 3 L.Ed.2d 804 (1959) ("The construction of a compact sanctioned by Congress under Art. I, § 10, cl. 3, of the Constitution presents a federal question."); *see also Washington Metropolitan Area Transit Auth. v. One Parcel of Land,* 706 F.2d 1312, 1318 (4th Cir.) (where two-part test of *Cuyler* is satisfied, interstate compact becomes federal law when consented to by Congress), *cert. denied,* ─── U.S. ───, 104 S.Ct. 238, 78 L.Ed.2d 229 (1983).

*Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), relied upon by appellant Funds herein, does not contradict *Delaware River* or *Cuyler.* In *Lake Country Estates,* the Court held only that the actions of a bi-state agency and its state officials, acting under an interstate compact approved by Congress, were "under color of state law" within the meaning of 42 U.S.C. § 1983. The Court reached this conclusion because:
The actual implementation of [the bi-state agency], after *federal* approval was obtained, depended upon the appointment of governing members and executives by the two States and their subdivisions and upon mandatory

Therefore, our inquiry is limited to whether the Waterfront Commission Compact is a congressionally sanctioned interstate compact within Art. I, § 10, cl. 3 of the Constitution. *Cuyler* provides guidance for our determination herein. In *Cuyler*, a Pennsylvania state court had interpreted an Interstate Agreement on Detainers, an interstate compact consented to by Congress, as providing no right to a pretransfer hearing. Thereafter, in a federal action involving the same Detainer Agreement, the Court of Appeals for the Third Circuit, while not reaching the constitutional issue, held that it was not bound by the state court's interpretation because the Agreement was an interstate compact approved by Congress and thus was a federal law subject to federal rather than state construction. The Supreme Court in *Cuyler* was called upon to decide whether federal courts were bound by the Pennsylvania court's interpretation because that court had interpreted state law, or whether the federal courts could fashion their own interpretation of the Agreement because congressional consent had transformed it into federal law. The Supreme Court agreed with the Third Circuit and held that an interstate compact or agreement becomes federal law if it is a congressionally sanctioned interstate compact within the meaning of the Compact Clause of the Constitution. According to the Court, although not all interstate agreements are within the scope of the Compact Clause, "where Congress has authorized the States to enter into a cooperative agreement, and where the subject matter of that agreement is an appropriate

subject for congressional legislation, the consent of Congress transforms the States' agreement into federal law under the Compact Clause." *Id.* at 440, 101 S.Ct. at 707 (footnote omitted). In applying this test to the interstate agreement in that case, the *Cuyler* court concluded that the agreement was a law of the United States because Congress had given its consent to the Detainer Agreement in advance by enacting the Crime Control Act of 1934, and because the subject matter of the interstate agreement was an appropriate subject for congressional legislation under both the Commerce and the Extradition Clauses of the United States Constitution.

Application of the *Cuyler* criteria to the instant case persuades us that the Waterfront Commission Compact should be viewed as federal law.[10] First, Congress clearly enacted a law consenting to the Compact, including § 9858. Act of Aug. 12, 1953, Pub.L. No. 83–252, 67 Stat. 541, *reprinted in* 1953 U.S.Code Cong. & Ad. News 605; *see* H.R.Rep. No. 998, 83d Cong., 1st Sess. 1 (1953) ("The purpose of the bill is to grant congressional consent, pursuant to the Federal Constitution, to an interstate compact between the States of New York and New Jersey setting up a bi-State agency to improve waterfront labor conditions in the port of New York area."); S.Rep. No. 583, 83d Cong., 1st Sess. 2 (1953) (same). Further, it is beyond dispute that Congress' recognized interest in regulating interstate and foreign commerce renders the subject matter of the Compact an appropriate subject for congressional legislation.[11]

financing secured, by the terms of the Compact, from the counties. In discharging their duties as officials of [the agency], the state and county appointees necessarily have also served the interests of the political units that appointed them. The federal involvement, by contrast, is limited to the appointment of one nonvoting member to the governing board. While congressional consent to the original Compact was required, the States may confer additional powers and duties on [the agency] without further congressional action.
*Id.* at 399, 99 S.Ct. at 1176 (footnotes omitted).

10. This view is consistent with that of the New York Court of Appeals. *American Sugar Ref.*

*Co. v. Waterfront Comm'n*, 55 N.Y.2d 11, 25–26, 432 N.E.2d 578, 584, 447 N.Y.S.2d 685, 691, *appeal dismissed sub nom. New York Shipping Ass'n v. Waterfront Comm'n*, 458 U.S. 1101, 102 S.Ct. 3474, 73 L.Ed.2d 1362 (1982); *In re Bell v. Waterfront Comm'n*, 20 N.Y.2d 54, 61, 63 n. 4, 228 N.E.2d 758, 763, 764 n. 4, 281 N.Y.S.2d 753, 760, 761 n. 4 (1967).

11. Congressional power to legislate in this area is derived from the Commerce Clause, Art. I, § 8, cl. 3, of the United States Constitution. *Cf. Petty Tennessee-Missouri Bridge Comm'n*, 359 U.S. 275, 281, 79 S.Ct. 785, 789, 3 L.Ed.2d 804 (1959) (congressional consent given to compact

Because the Compact, including § 9858, was specifically authorized by Congress, and because the subject matter of the Compact is an appropriate subject for congressional legislation, we hold that the consent of Congress transformed the Compact into federal law under the Compact Clause. Therefore, we conclude that under 29 U.S.C. § 1144(d), the assessment procedure of § 9858 is not preempted by ERISA.

As a final matter, we address the Funds' argument that the United States Supreme Court has already decided that § 9858 of the Compact should be viewed as a state law. That argument proceeds as follows: In *American Sugar Refining Co. v. Waterfront Commission*, 55 N.Y.2d 11, 432 N.E.2d 578, 447 N.Y.S.2d 685 (1982), the New York Court of Appeals, in holding that the Commission was authorized to make assessments against vacation and holiday benefits and GAI benefits, characterized § 9858 of the Compact as federal law. The Funds and NYSA appealed that decision to the Supreme Court pursuant to 28 U.S.C. § 1257(2), which authorizes appeal to the Supreme Court when a state court declines to invalidate a state statute in the face of a charge that such statute is repugnant to the Constitution, treaties or laws of the United States. The Supreme Court dismissed the appeal "for want of a substantial federal question." *New York Shipping Association v. Waterfront Commission*, 458 U.S. 1101, 102 S.Ct. 3474, 73 L.Ed.2d 1362 (1982). The Court's assertion of appellate jurisdiction, the Funds argue, necessarily included the determination that

§ 9858 is a state law. According to the Funds, if § 9858 is a federal law, Supreme Court review would have been available only by certiorari under 28 U.S.C. § 1257(3), in which case the Court, under 28 U.S.C. § 2103, would have dismissed the appeal for want of jurisdiction and then ruled on the propriety of granting certiorari.

Although the Supreme Court's dismissal of the appeal "for want of a substantial federal question" might, as the Funds argue, be construed as an assumption that the Compact is a state rather than a federal law, we believe that the Court really meant that the issue presented, regardless of the basis of its jurisdiction, was not sufficiently important to warrant review. In our view, the appellants read too much into the Court's failure to treat the appeal as improvidently taken and to convert it into a petition for a writ of certiorari before acting. Accepting the Funds' argument would require considerable speculation by this court to conclude that the Supreme Court intended *sub silentio* and by summary disposition to overrule a well-established rule [12] most recently reaffirmed in *Cuyler*. We find such a conclusion unjustified.

We have considered the Funds' other arguments in this appeal and we conclude that they are without merit.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

---

affecting navigable waters and interstate commerce).

The House and Senate Reports accompanying the Act of Aug. 12, 1953, demonstrate Congress' awareness that the problems existing at the Port of New York were of national significance, and also evince Congress' recognition that it had the authority to legislate in this area. In a report endorsing the solution to corruption embodied in the Compact, the Subcommittee of the Senate Committee on Interstate and Foreign Commerce stated: "[T]he Federal Government's concern with [the New York area waterfront] has been intensified by a substantial increase in the flow of military and strategic materials to Europe and Africa through its shipping facilities." S.Rep. No. 653, 83d Cong., 1st Sess. 5 (1953). The Report also noted that the corruption in the

New York Port area is affecting "large segments of our maritime industries," and that "[t]he entire Nation has a stake in safeguarding this port and its facilities. *Id.* at 6. *See also* H.R.Rep. No. 998, at 1–2 ("[T]he plan proposed by the States of New York and New Jersey to eradicate those public evils is urgently needed .... [V]ital public installations, handling military traffic and other Government shipments under the foreign-aid program, have been seriously disrupted."); S.Rep. No. 583, at 1 ("New York is the Nation's largest port; it also is one of the finest natural harbors in the world, and the chief avenue of commerce with our friends and allies across the Atlantic.").

**12.** See *supra* note 7.