# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 99-1275

———————

State of Nebraska,                *
                                     *

         Appellant,      *

                                     *   Appeal from the United States

    v.                     *   District Court for the

                                     *   District of Nebraska.

Central Interstate Low-Level    *

Radioactive Waste Commission,   *

                                     *

         Appellee.       *

———————

Submitted: December 17, 1999
Filed: April 4, 2000

———————

Before MURPHY and MAGILL, Circuit Judges, and SMITH,[*] District Judge.

———————

MAGILL, Circuit Judge.

This case arises out of the State of Nebraska's suit against the Central Interstate Low-Level Radioactive Waste Commission (Commission) under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), claiming that it has the unilateral right under the Central Interstate Low-Level Radioactive Waste Compact (Compact)[1] to veto low-level

———————

[*]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri, sitting by designation.

[1]See Neb. Rev. Stat. § 71-3521.

radioactive waste import and export permits issued by the Commission. Nebraska appeals the district court's[2] grant of summary judgment holding that Nebraska does not have the right to veto waste export permits. Nebraska also appeals the district court's refusal to decide whether Nebraska has the right to veto waste import permits because there is no "actual controversy" under the Declaratory Judgment Act. We affirm the judgment of the district court.

## I. BACKGROUND

In 1980, faced with the possibility that the United States would be left with no disposal sites for low-level radioactive waste,[3] Congress enacted the Low-Level

---

[2]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

[3]The low-level radioactive waste problem began in the 1970s when six commercial low-level radioactive disposal sites were operating in the United States. See New York v. United States, 505 U.S. 144, 150 (1992). By 1979, three of the facilities had closed permanently, and the states where the three remaining facilities were located had announced plans to shut down or to severely limit access to their sites. See id. The issue of the availability of low-level radioactive waste disposal sites is serious because:

> We live in a world full of low level radioactive waste. Radioactive material is present in luminous watch dials, smoke alarms, measurement devices, medical fluids, research materials, and the protective gear and construction materials used by workers at nuclear power plants. Low level radioactive waste is generated by the Government, by hospitals, by research institutions, and by various industries. The waste must be isolated from humans for long periods of time, often for hundreds of years. Millions of cubic feet of low level radioactive waste must be disposed of each year.

Id. at 149-50.

Radioactive Waste Policy Act (LLRWA), Pub. L. No. 96-573, 94 Stat. 3347 (1980) (amended 1986), 42 U.S.C. § 2021b-2021d, to promote the development of regional low-level radioactive waste disposal facilities. The LLRWA directs: "Each State shall be responsible for providing, either by itself or in cooperation with other States, for the disposal of . . . low-level-radioactive waste generated within the State," 42 U.S.C. § 2021c(a)(1)(A), with the exception of certain waste generated by the federal government. See 42 U.S.C. § 2021c(a)(1)(B), 2021c(b). The LLRWA permits states to "enter into such compacts as may be necessary to provide for the establishment and operation of regional disposal facilities for low-level radioactive waste." 42 U.S.C. § 2021d(a)(2).

Pursuant to the LLRWA, Nebraska, Kansas, Oklahoma, Louisiana, and Arkansas (collectively, the party states) entered into the Compact and requested Congressional approval. In 1986, Congress approved the Compact under the Omnibus Low-Level Radioactive Waste Interstate Compact Consent Act, Pub. L. No. 99-240, § 222, 99 Stat. 1859, 1863-71 (1986). The Compact established the Commission as its governing body. The Commission, which is a separate legal entity with standing to sue and be sued, is comprised of locally appointed representatives from each of the five party states to the Compact. The Commission's powers pertinent to this case include: 1) approving applications for permits to import and export waste, 2) approving the development and operation of regional low-level radioactive waste disposal facilities for the Compact, and 3) entering into agreements for the importation of waste into the Compact region and for the right of access to facilities outside the region for waste generated within the Compact region. In 1987, the five-state Commission selected Nebraska as a "host state"[4] (thus far, the sole host state) for a regional disposal facility.

---

[4]Article II(g) of the Compact states: "Host state means any party state in which a regional facility is situated or is being developed."

The dispute in this case[5] arose from Nebraska's opposition to several applications for permits to export waste to facilities outside the Compact region.[6]  Between June 1997 and July 1998, the Commission issued thirteen such permits by a four to one vote, with Nebraska voting to deny each permit.  On August 22, 1997, Nebraska brought a declaratory judgment action against the Commission arguing that as a host state it has the right to veto both export and import permits.  The district court entered judgment for the Commission on the issue of whether a host state has the right to veto export permits and declined to reach the issue of whether a host state has the right to veto import permits because the import permit issue does not present an "actual controversy" as required by the Declaratory Judgment Act, 28 U.S.C. § 2201(a).  Nebraska appeals these issues.

## II.  ANALYSIS

In this appeal, we must consider whether the Compact grants a host state the right to veto waste export permits, and therefore our review is plenary.  See Nebraska v. Central Interstate Low-Level Radioactive Waste Comm'n, 187 F.3d 982, 985 (8th Cir. 1999).  When approved by Congress, a compact becomes a statute of the United States and must be construed and applied according to its terms.  See Oklahoma v. New Mexico, 501 U.S. 221, 236 n.5 (1991).  When the statutory language provides a

---

[5]This is not the first controversy between Nebraska and the Commission concerning the Compact; the relationship has been notably litigious.  See Nebraska v. Central Interstate Low-Level Radioactive Waste Comm'n, 187 F.3d 982 (8th Cir. 1999); Nebraska v. Central Interstate Low-Level Radioactive Waste Comm'n, 26 F.3d 77 (8th Cir. 1994); Nebraska v. Central Interstate Low-Level Radioactive Waste Comm'n, 974 F. Supp. 762 (D. Neb. 1997).  See also Concerned Citizens of Neb. v. United States Nuclear Regulatory Comm'n, 970 F.2d 421 (8th Cir. 1992).

[6]The fees generated by the granting of export permits are an important source of funding for the Commission.  For example, the Commission received $56,000 from the July 1998 export permit granted to the Nebraska Public Power District.

clear answer, the analysis ends. See Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999). In construing the Compact, we must be cognizant of the purpose of the Compact and any interpretive principles mandated by the Compact. Article IX of the Compact states that "[t]he provisions of this compact shall be liberally construed to give effect to the purpose thereof." Article I of the Compact states that its purpose is "to provide the framework for [] a cooperative" effort among the party states to, among other things, "effectively and efficiently manage low-level radioactive wastes and to encourage the reduction of the generation thereof . . . ."

## A. Export Permits

The Compact requires Commission approval for all waste exportation from the Compact region. Article III(g)(3) states that: "Unless authorized by the commission, it shall be unlawful . . . for any person . . . [t]o export from the region [] waste which is generated within the region."[7] However, to determine how a permit for the exportation of waste in Article III(g)(3) is to be obtained from the Commission, one must look elsewhere in the Compact because Article III(g) is silent on the subject.

In Article IV(b), the Compact provides for a majority vote rule that empowers the Commission to decide most issues germane to the Compact by majority vote of its

---

[7]Article III(g) states in its entirety:

Unless authorized by the commission, it shall be unlawful after January 1, 1986, for any person:
(1) To deposit at a regional facility, waste not generated within the region;
(2) To accept at a regional facility, waste not generated within the region;
(3) To export from the region, waste which is generated within the region; and
(4) To transport waste from the site at which it is generated, except to a regional facility.

members. Article IV(b) states in pertinent part:

> [E]ach commission member shall be entitled to one vote. Unless otherwise provided herein, no action of the commission shall be binding unless a majority of the total voting membership casts its vote in the affirmative.

However, in Article IV(m)(6), the Compact provides a narrow exception to the majority vote provision of Article IV(b) which grants a veto power to host states over certain agreements entered into by the Commission. Article IV(m)(6) states:

> The commission shall:
> Notwithstanding any other provision of this compact, have the authority to enter into agreements with any person for the importation of waste into the region and for the right of access to facilities outside the region for waste generated within the region. Such authorization to import or export waste requires the approval of the commission, including the affirmative vote of any host state which may be affected.

The main issue in this appeal is whether permits to export waste from the region fall within the narrow veto provision of Article IV(m)(6) or whether export permits do not fall within Article IV(m)(6) and are subject to the majority vote arrangement of Article IV(b). The second sentence of Article IV(m)(6) grants a veto power to "any host state which may be affected" by "[s]uch authorizations" described in the first sentence of Article IV(m)(6). Therefore, in order to prevail in its appeal, Nebraska must show that export permits fall within the first sentence of Article IV(m)(6), which pertains to "agreements . . . for the right of access to facilities outside the region."

Nebraska argues that "agreements with any person . . . for the right of access to facilities outside the region" includes two categories of Commission action: 1) permits under Article III(g)(3) from the Commission to regional generators for the exportation of waste from the region, and 2) agreements between the Commission and outside

-6-

waste depositories for the latter to accept waste exported from the region. Nebraska argues that both categories qualify as "agreements with any person . . . for the right of access to facilities outside the region" because both types of authorization are necessary before waste can be removed from the region and deposited elsewhere. Nebraska's argument fails for two main reasons: 1) Article IV(m)(6) only encompasses agreements granting "the right of access," which export permits do not grant, and 2) Article IV(m)(6) only covers agreements between the Commission and "person[s]" *outside* the Compact region while export permits involve the Commission and "person[s]" *inside* the Compact region.

The first reason that export permits are not subject to a veto by a host state is because export permits do not confer "the right of access to facilities outside the region." A comparison of the documents involved in permits to export waste and those involved in contracts for access to facilities outside of the Compact region underscores the differences in the rights involved in the respective agreements. The short two-page application submitted by persons to receive authorization to export waste is entitled "Application for Non-Federal Facilities to Export Low-Level Radioactive Waste from the Central Interstate Low-Level Radioactive Waste Compact Region." If the application is approved, the Commission returns to the applicant a one-paragraph document entitled "Authorization to Export Waste." The permit merely allows a person to export low-level radioactive waste outside of the region if such shipment of waste is otherwise lawful and specifies that the "authorization by the Commission relates only to the requirements of the Central Interstate Low-Level Radioactive Waste Commission, and in no way affects any other requirement, liabilities, and responsibilities that may be applicable under any other state and federal laws and regulations."

In contrast to the documents involved in export permits, agreements made by the Commission for the right of access to facilities outside the region actually specify that they grant the right of access to facilities outside the region. On October 21, 1993,

such an agreement was entered into by the Commission with the Southeast Compact regional facility in Barnwell County, South Carolina. The resulting "Contract of Access to the Southeast Compact Commission's Regional Facility in Barnwell County, South Carolina" is a detailed, multi-page document specifying the circumstances under which "[a]ccess to the Southeast Compact Regional Facility shall be granted to the generators within the Central LLRW Commission region . . . ."

It is undisputed that Article IV(m)(6)'s language refers, at least in part, to agreements, such as the Southeast Compact agreement, between the Commission and facilities outside the Compact region for the right of access to such facilities for waste generated within the region. However, it is not reasonable to also construe an export permit as granting "the right of access to facilities outside the region." An export permit is a "right to remove," it is not a "right of access" to anything. The mere fact that being granted an export permit is a necessary condition to exporters obtaining a "right of access to facilities outside the region" does not mean that export permits were meant to be included within the term "agreements . . . for the right of access to facilities outside the region" and to be subject to a veto from a host state. It is clear that "agreements . . . for the right of access" refers only to the second necessary condition, to obtaining the right to deposit waste in a facility outside the Compact region; the actual agreement made by the Commission with a waste disposal facility outside the Compact region.

The second reason that export permits do not fall within the language of Article IV(m)(6) is because it is clear that the "person"[8] Article IV(m)(6) is referring to is a person outside of the party states, not a person within the party states. Nebraska's argument that export permits fall within the terms of Article IV(m)(6) can prevail only if "agreements with any person . . . for the right of access to facilities outside of the

[8]Article II(m) states: "Person means any individual, corporation, business enterprise, or other legal entity, either public or private."

-8-

region" could refer to the Commission authorizing an action by a person within the Compact region. However, Article IV(m)(6) cannot be interpreted in this manner. When the Commission enters "into agreements with any person for the importation of waste into the region," it is entering into agreements with persons outside the region that would allow those persons to transport waste into the region. Similarly, when the Commission enters "into agreements with any person . . . for the right of access to facilities outside the region," the "person" referred to is not a person within the Compact region but a person outside of the region who can grant access to a waste facility outside of the region. The language of Article IV(m)(6),"agreements with any person . . . for the right of access to facilities outside of the region," does not refer to the Commission authorizing anything by a person within the Compact region. The language refers only to a person outside of the Compact region entering into an agreement with the Commission allowing the Compact region access to waste disposal facilities outside of the Compact region. Because the Commission only confers export permits upon persons inside the Compact region and Article IV(m)(6) refers only to agreements between the Commission and persons outside the Compact region, export permits are not within the terms of Article IV(m)(6).

If the provisions of the Compact at issue in this appeal were ambiguous, reliance on the Compact's liberal construction clause and statement of purpose would be appropriate to help resolve the ambiguity. However, in this case there is no need to rely on the liberal construction clause because the Compact's language is unambiguous and does not provide for a veto power to host states over export permits. Nebraska has not shown that it is reasonable to construe "agreements . . . for the right of access to facilities outside the region" as encompassing export permits. Export permits simply are not the type of agreements contemplated within the veto power of Article IV(m)(6).[9]

---

[9]We also reject Nebraska's appeal from the district court's holding that the question of whether the veto provisions of Article IV(m)(6) apply to import permits

## III. CONCLUSION

In sum, we affirm the district court's holding that host states do not have a veto power over export permits and the court's holding that the question whether host states have a veto power over import permits does not present a justiciable dispute sufficient to satisfy the "actual controversy" requirement of the Declaratory Judgment Act.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

does not present an "actual controversy," as required by the Declaratory Judgment Act, because no waste import permits are pending or threatened and "it is especially inadvisable to make unnecessary decisions that control the future of public bodies like the Commission." Nebraska v. Central Interstate Low-Level Radioactive Waste Comm'n, 29 F.Supp.2d 1085, 1092 (D. Neb. 1998). Nebraska's claim that someday in the future the Commission may approve an application to import waste does not present sufficiently immediate consequences to warrant the exercise of jurisdiction. See Marine Equip. Management Co. v. United States, 4 F.3d 643 (8th Cir. 1993).